DALQUAVIS WARD,

                Plaintiff,

v.                                             Case No. 20-cv-338-pp

KENOSHA COUNTY JAIL, DAVID BETH,
JOHN HAGERTY, JAMES PARKER,
DAVID STAUCHE, and CORPORAL MIKUTIS,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING
COMPLAINT UNDER 28 U.S.C. §1915A**

      Dalquavis Ward, an inmate at the Kenosha County Jail who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 3, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $7.47. Dkt. No. 5. The court received that fee on April 15, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff says he has been incarcerated at the Kenosha County Jail since June 27, 2019. Dkt. No. 1 at 3. At that time, he was placed on a two-man escort/full-restraints restriction. Id. The court understands this to mean that when the plaintiff is outside of his cell, he must be fully restrained and escorted by two officers at all times.

The plaintiff says that he signed up to attend religious group services multiple times on different occasions but the jail denied him; the most recent time he signed up was January 1, 2020 and that request was denied, too. Dkt.

3

No. 1 at 3-4. On January 9, 2020 the plaintiff filed an inmate grievance "stating about [his] situation for being denied [his] religious services . . . ." Id. at 4. He says that on January 11, 2020, Cpl. Parker responded that the plaintiff didn't file the grievance in the right time frame. Id. On January 23, 2020, the plaintiff filled out an appeal form saying that he was being denied religious services in violation of his First and Fourteenth Amendment rights. Id. On January 29, 2020, defendant Mikutis allegedly responded to the plaintiff's grievance, saying that the plaintiff could not attend religious services because he was on a two-man escort/full-restraints restriction. Id. at 4-5. According to the plaintiff, Mikutis said this was necessary for the "safety, security or good order of the facility." Id. at 5

> Mikutis also stated the following:
>
> This is not to say that the facility does not recognize the importance of faith expression and that religious support may aid in your adjustment to institutional life and may aid in other ways as well. The facility is open to the reasonable accommodation of requests that do not impose a substantial burden upon your religious exercise. Please be cognizant of compelling safety and security concerns and the facility will work at providing accommodations to you in the least restrictive means. Have you put in a religious accommodation request or asked to see a Chaplain? Is there a chaplain from your faith-based organization that can visit you at the facility? A suggested course would be for you to fill out an accommodation request and ask to see the facility chaplain and explore options suited to your situation.

Dkt. No. 1-1 at 11. The complaint does not say whether the plaintiff pursued any of the alternatives Mikutis offered in his response.

The plaintiff says that on February 3, 2020, he got a letter from John Hagerty, the chaplain of the jail, indicating that the plaintiff could

4

not attend religious services due to being on two-man escort/full restraints and that it was necessary for the safety or good order of the facility. Id. at 5. The plaintiff stated that he still was not able to attend religious services "for special guidance." Id.

The plaintiff requests money damages and states that he "would also like for the facility to fix their procedures regarding religious serv[ices]." Id. at 6.

C. Analysis

The plaintiff has sued the Kenosha County Jail, David Beth, John Hagerty, James Parker, David Stauche and Cpl. Mikutis. Dkt. No. 1 at 1. He alleges that the defendants' refusal to allow him to attend religious services because he is on a two-man escort/full-restraints restriction unconstitutionally infringes on his freedom to exercise his religion.[1] "Under the Free Exercise Clause of the First Amendment of the United States Constitution . . . no law may prohibit the free exercise of religion." Civil Liberties for Urban Believers v. City of Chi., 342 F.3d 752, 762-63 (7th Cir. 2003). The U.S. Supreme Court has long recognized, however, that an inmate's constitutional right to practice his religion must be balanced against the state's interest in effectively operating its prisons. McRoy v. Cook Cty. Dept. of Corrections, 366 F. Supp. 2d 662, 672-73 (N.D. Ill. 2005) (citations omitted).

---

[1] The plaintiff does not appear to challenge the jail's decision to place him on a two-man escort/full-restraints restriction. He challenges only the impact that restriction has on his opportunity to attend religious services.

5

In balancing these two interests, courts must use a deferential standard of review when analyzing an inmate's allegation that a prison practice violates his constitutional rights. Id. at 674. A court may deem a prison regulation invalid only if it is not "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987). In making that determination, courts apply the four-factor test outlined by the Supreme Court in Turner. See Tarpley v. Allen Cty., Ind., 312 F.3d 895, 898 (7th Cir. 2002). The court will discuss below each factor as applied to the plaintiff's allegations.

First, the court must consider whether, based on the plaintiff's allegations, the jail's policy was rationally connected to a legitimate governmental interest. Tarpley, 312 F.3d at 898. The plaintiff explains that Mikutis told him he was not permitted to attend religious activities for the safety, security and good order of the facility. Because the plaintiff was on a two-man escort/full-restraints restriction, two officers would have to accompany and remain with the plaintiff during any service he attended. Requiring two staff members to sit with the plaintiff during a service rather than attend to their other duties at the jail would negatively impact the safety, security and good order of the jail. This factor weighs in favor of the validity of the policy.

Second, the court must consider, based on the plaintiff's allegations, whether he had an alternative means to vindicate his free exercise rights. Tarpley, 312 F.3d at 898. The plaintiff attached Mikutis's response to his inmate grievance. Mikutis advised the plaintiff to fill out a religious

6

accommodation request, to talk to the chaplain or to consider inviting a faith leader visit the plaintiff at the facility. The court does not know whether the plaintiff pursued these options, but Mikutis's response demonstrates that alternative means for the plaintiff to exercise his rights existed. This factor also weighs in favor of the validity of the policy.

Third, the court must consider what effect accommodating the plaintiff's rights would have on the officers and other inmates. Tarpley, 312 F.3d at 898. As noted, requiring two guards to sit with the plaintiff during services would prevent them from performing their other duties and would prevent them from being available to address other inmates' needs, negatively impacting both officers and inmates. This factor weighs in favor of the validity of the policy.

Finally, the court must consider whether there were ready alternatives to the jail's regulation. Tarpley, 312 F.3d at 898. The court does not know the answer to that question. It does not know why the jail placed the plaintiff on the two-man/full restraints restriction. It does not know whether there were alternatives available. Assuming, however, that the restriction was appropriate, the court cannot think of an alternative to refusing to allow a prisoner under such a restriction to attend religious services.

The court concludes that the plaintiff has not stated a claim that his religious freedom was impermissibly burdened under the First Amendment. From the plaintiff's allegations, the court draws the reasonable inference that the jail's policy of denying inmates who are on a two-man escort/full-restraints restriction from attending religious services is constitutionally valid because it

7

is reasonably related to the legitimate penological interest of maintaining the safety, security and good order of the jail.

The court will, however, allow the plaintiff to proceed on an official-capacity claim against Sheriff David Beth under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The analysis under RLUIPA is different than the analysis under the First Amendment and it is easier for a plaintiff to state a claim under RLUIPA. Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049, 1057 (W.D. Wis. 2009).

To state a RLUIPA claim, a plaintiff need only allege that a particular restriction substantially burdens his religious experience. Id. (citing Cutter v. Wilkinson, 544 U.S. 709, 712 (2005)). The burden then shifts to the defendants to show that the restriction furthers "a compelling governmental interest" and does so by "the least restrictive means." Id. (citing Cutter, 544 U.S. at 712). The plaintiff alleges that under jail policy, being on a two-man escort/full-restraints restriction means that he cannot participate in religious services. This is enough to state a claim under RLUIPA. The burden now shifts to the defendants to show that the policy furthers a compelling governmental interest and that it does so by the least restrictive means.

Under RLUIPA only injunctive relief is available—money damages are not available because RLUIPA does not create a cause of action against jail officials in their personal capacities. See Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012). The plaintiff alleges that he still is unable to attend religious services and that he would "like for the facility to fix their procedures regarding

8

Case 2:20-cv-00338-PP-WED   Filed 10/20/20   Page 8 of 12   Document 11

is reasonably related to the legitimate penological interest of maintaining the safety, security and good order of the jail.

The court will, however, allow the plaintiff to proceed on an official-capacity claim against Sheriff David Beth under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The analysis under RLUIPA is different than the analysis under the First Amendment and it is easier for a plaintiff to state a claim under RLUIPA. Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049, 1057 (W.D. Wis. 2009).

To state a RLUIPA claim, a plaintiff need only allege that a particular restriction substantially burdens his religious experience. Id. (citing Cutter v. Wilkinson, 544 U.S. 709, 712 (2005)). The burden then shifts to the defendants to show that the restriction furthers "a compelling governmental interest" and does so by "the least restrictive means." Id. (citing Cutter, 544 U.S. at 712). The plaintiff alleges that under jail policy, being on a two-man escort/full-restraints restriction means that he cannot participate in religious services. This is enough to state a claim under RLUIPA. The burden now shifts to the defendants to show that the policy furthers a compelling governmental interest and that it does so by the least restrictive means.

Under RLUIPA only injunctive relief is available—money damages are not available because RLUIPA does not create a cause of action against jail officials in their personal capacities. See Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012). The plaintiff alleges that he still is unable to attend religious services and that he would "like for the facility to fix their procedures regarding

religious serv[ices]." Dkt. No. 1 at 6. That injunctive relief will be available to the plaintiff only while he remains at the jail. If, during the pendency of this case, the plaintiff is transferred to a state prison or released from the jail, his RLUIPA claim will be moot. See Grayson, 666 F.3d at 451.

Because the court is allowing the plaintiff to proceed on a claim based on harm allegedly caused by a jail policy rather than by the action or inaction of an individual, the plaintiff has not stated an individual-capacity claim against any of the individual defendants. See Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting the "long-settled rule" that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). The court will dismiss John Hagerty, James Parker, David Stauche and Corporal Mikutis. The plaintiff may pursue his RLUIPA claim against David Beth in his official capacity.

Finally, the court will dismiss the Kenosha County Jail as a defendant. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The jail is not a person or a legal entity—it is an organization, not an individual subject to suit under §1983. Johnson v. Racine Cty. Jail, No. 15-CV-1291-PP, 2016 WL 482031, at *3 (E.D. Wis. Feb. 5, 2016); see also Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Nawrocki v. Racine Cty. Jail, No. 08-CV-96-BBC, 2008 WL 4417314, at *1 (W.D. Wis. Mar. 7, 2008) ("a building is not a proper party to a lawsuit brought under 42 U.S.C. § 1983.").

9

Case 2:20-cv-00338-PP-WED   Filed 10/20/20   Page 9 of 12   Document 11

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** the Kenosha County Jail, John Hagerty, James Parker, David Stauche and Corporal Mikutis as defendants based on the plaintiff's failure to state a claim against them.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant David Beth under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant David Beth to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$307.59** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

10

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 20th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**